IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RODRICK JOHNSON PATTERSON**                                                          **PLAINTIFF**

**V.**                                                   **CAUSE NO. 3:13-CV-432-CWR-FKB**

**WINSTON KIDD; HINDS COUNTY**                                     **DEFENDANTS**
**BOARD OF SUPERVISORS**

**ORDER**

Before the Court is a motion for summary judgment filed by defendant Winston Kidd. Docket No. 14. The matter is fully briefed, Docket Nos. 18-19, and the Court is ready to rule.

**I.  Factual and Procedural History**

Rodrick Patterson was charged with committing a crime in Hinds County, Mississippi. Judge Winston Kidd presided over Patterson's case in the Circuit Court of Hinds County. A jury was unable to render a verdict and Judge Kidd declared a mistrial. Docket Nos. 15-1; 18. Patterson was later released.

In this suit, Patterson claims Judge Kidd is liable for violating Patterson's right to a speedy trial and for denying Patterson bond. Docket No. 1, at 4. In his brief opposing summary judgment, he adds that Judge Kidd violated state court rules regarding withdrawal of counsel and jury deliberations. Docket No. 18, at 2-3. Patterson seeks damages, expungement, and other relief. Docket No. 1, at 4.[1]

The State of Mississippi stepped in to defend Judge Kidd. This motion followed.

---

[1] Patterson also named as a defendant the Hinds County Board of Supervisors, but made no specific allegations of wrongdoing against that entity. *See* Docket No. 1.

**II.      Present Arguments**

The State argues that Judge Kidd is entitled to summary judgment under the doctrine of absolute judicial immunity. Docket No. 15. Because Patterson's claim stems from judicial acts performed in Judge Kidd's official capacity, the suit cannot be maintained, it says. *Id.*

Patterson responds by listing the errors Judge Kidd made in the case. Docket No. 18. Patterson claims Judge Kidd knew that Patterson had been incarcerated without bond for over one year, a period of time which exceeds the speedy trial deadline. *Id.* at 1-2. This and other errors violated the Mississippi and United States Constitutions, among other authorities. *Id.* Patterson has also submitted an April 2014 newspaper article which found "nearly 130 inmates who have been in the [Hinds County] detention center for a year or more without trial." Docket No. 20, at 2.[2]

**III.     Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would

---

[2] The newspaper article, however, is not evidence for purposes of defeating a motion for summary judgment; it is inadmissible hearsay. *See Roberts v. City of Shrevepor*t, 397 F.3d 287, 295 (5th Cir. 2005). For purposes of the decision announced today it matters not whether the article is admissible.

prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). "These rules apply equally to *pro se* litigants. Although *pro se* pleadings must be viewed liberally, such plaintiffs are still required to follow Rule 56 of the Federal Rules of Civil Procedure." *Horton v. Faurecia Automotive*, No. 3:13-CV-21-DPJ-FKB, 2014 WL 2196310, at *2 (S.D. Miss. May 27, 2014).

## IV.    Discussion

"A judge generally has absolute immunity from suits for damages." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221 (5th Cir. 2009) (citation omitted). According to the United States Supreme Court, the purpose of judicial immunity is to enable judges to impartially and faithfully apply the law:

> When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.

*Forrester v. White*, 484 U.S. 219, 223 (1988). Judicial immunity also encourages aggrieved parties to take their concerns to the appellate courts, rather than file new litigation. *Id.* at 225-27.

Judicial "immunity is overcome in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12 (citations omitted).

> This circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

3

*Davis*, 565 F.3d at 222 (citation omitted). "These factors are broadly construed in favor of immunity." *Id.* at 223 (citation omitted).

The briefing and associated evidence, when viewed in the light most favorable to Patterson, shows that he has not met the high standard required to overcome judicial immunity. His claim against Judge Kidd stems from the Judge's speedy trial, bond, withdrawal of counsel, and jury deliberations rulings. All of those acts are normal judicial functions, of the type expected to issue from the bench or a judge's chambers, which were made on a case properly before Judge Kidd. *See id.* at 222.

Patterson is plainly disappointed with Judge Kidd's rulings[3], but "the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have." *Forrester*, 484 U.S. at 226. The doctrine of judicial immunity simply does not allow a person to express their frustration with a judge's rulings by bringing a lawsuit seeking damages from the judge.

## V.    Conclusion

The motion for summary judgment is granted. A Final Judgment will be issued as to defendant Kidd only, as the Court has determined that this ruling disposes of all claims against him and there is no just reason to delay entry of Final Judgment as to him. *See* Fed. R. Civ. P. 54(b); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-9 (1980).

**SO ORDERED**, this the 24th day of September, 2014.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[3] Although the Court has not relied upon the newspaper article submitted by Patterson, there is no doubt that speedy trial issues loom large in Hinds County. At least three Justices of the Mississippi Supreme Court have expressed their frustration with criminal trial delays in Hinds County. *See Franklin v. State*, 136 So. 3d 1021, 1038 (Miss. 2014) (Dickinson, J., dissenting).