IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RODRICK JOHNSON PATTERSON                                    PLAINTIFF

V.                                          CAUSE NO. 3:13-CV-432-CWR-FKB

HINDS COUNTY, MISSISSIPPI                                    DEFENDANT

---

## MEMORANDUM OPINION AND ORDER

---

*"If it suffices to accuse, what will become of the innocent?"*

> *Coffin v. United States*, 156 U.S. 432, 455
> (1895) (quoting Julian, Emperor of the Roman
> Empire from 361 – 363 AD).

Rodrick Patterson filed this *pro se* lawsuit seeking compensation for 23 months of incarceration in the Hinds County Detention Center. His time in jail was pointless, he says, because the criminal charges he faced were ultimately dismissed. He wants to hold the government accountable for violating his constitutional right to a speedy trial.

Hinds County has now moved for summary judgment. It seeks to be released from this suit. Its motion is fully briefed and ready for review.

The Court has considered the facts, arguments, and governing law. Like many others in Mississippi, it has taken notice of our speedy trial problem. Speedy trial violations are widespread and worsening. Parts of Mississippi have significant problems honoring this constitutional right. There is no solution on the horizon.

In this Memorandum Opinion, the Court will explain why Patterson is not entitled to compensation despite being detained for 23 months in apparently deplorable conditions. The law

is the law. But neither the law nor this Court can answer the most important question presented by this case and so many others: why is Mississippi's criminal justice system unable to bring accused persons to trial in a reasonable amount of time?

## I.      Factual and Procedural History

Rodrick Patterson was charged with committing aggravated assault in Hinds County. Judge Winston Kidd presided over Patterson's case in the Circuit Court of Hinds County. A jury was unable to render a verdict. Judge Kidd declared a mistrial.

The Hinds County District Attorney's Office subsequently declined to retry the case, so Patterson was released. From his arrest to his release, Patterson had been incarcerated for 23 months.

Patterson subsequently filed this 42 U.S.C. § 1983 action. He claimed that Judge Kidd and Hinds County were liable for violating his constitutional right to a speedy trial and for denying him bond, among other rulings made during the case. Patterson sought monetary damages, expungement, and other relief.

Earlier in this suit, Judge Kidd was granted summary judgment based on judicial immunity. Hinds County then took some discovery before filing this motion.[1] It now argues that it is not liable for Judge Kidd's rulings, that Patterson has not shown a County policy or custom of constitutional violations, and that it is not responsible for the District Attorney's Office because that office is an entirely separate state agency.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A

---

[1] The motion seeks either dismissal or summary judgment. The Court will treat it as the latter.
[2] Fed. R. Civ. P. 56(a).

party seeking to avoid summary judgment must identify admissible evidence in the record

showing a fact dispute.[3] "Once a summary judgment motion is made and properly supported, the

nonmovant must go beyond the pleadings and designate specific facts in the record showing that

there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions'

will satisfy the nonmovant's burden."[4]

The Court views the evidence and draws reasonable inferences in the light most favorable

to the nonmovant.[5] But the Court will not, "in the absence of any proof, assume that the

nonmoving party could or would prove the necessary facts."[6]

"These rules apply equally to *pro se* litigants. Although *pro se* pleadings must be viewed

liberally, such plaintiffs are still required to follow Rule 56."[7]

## III.     Discussion

### A.      Federal Law

This case arises from two principles at the heart of our law: the speedy trial right and the

presumption of innocence.

The first is enshrined in the Sixth Amendment to the United States Constitution. It reads,

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."[8]

The speedy trial guarantee "is one of the most basic rights preserved by our Constitution."[9]

The presumption of innocence is not found in the Constitution's text, but it is "the

bedrock, axiomatic and elementary principle whose enforcement lies at the foundation of the

---

[3] *Id.* at 56(c)(1).
[4] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).
[5] *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).
[6] *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).
[7] *Horton v. Faurecia Automotive*, No. 3:13-CV-21, 2014 WL 2196310, at *2 (S.D. Miss. May 27, 2014).
[8] U.S. Const. amend. VI.
[9] *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967).

administration of our criminal law."[10] The presumption of innocence is deeply rooted in

thousands of years of history – found in Roman law, English law, and perhaps even in

Deuteronomy.[11]

The speedy trial right and the presumption of innocence go hand-in-hand. We believe that

innocent people should not be punished unless and until they are convicted of a crime. Forcing

someone to stay in "lengthy pretrial detention" is "essentially . . . punishment."[12] To avoid

punishing the innocent, therefore, accused persons must have a right to a speedy trial.

The Supreme Court has long recognized these values. It has held that the speedy trial

right is designed "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and

concern of the accused; and (iii) to limit the possibility that the defense will be impaired."[13]

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.[14]

The Court added that jails are "generally deplorable . . . institutions" which can have "a

destructive effect on human character."[15]

Experts agree: jails "are the worst blight in American corrections."[16] Jails typically house

the full range of the accused (from the truly innocent to the most violent offenders), but are less

---

[10] *Betterman v. Montana*, 136 S. Ct. 1609, 1614 (2016) (quotation marks, citation, and brackets omitted).
[11] *Coffin v. United States*, 156 U.S. 432, 454 (1895).
[12] Brief for the United States as Amicus Curiae Supporting Respondent at 10, Betterman v. Montana, 136 S. Ct. 1609 (2016) (No. 14-1457) [hereinafter DOJ Brief].
[13] *Barker v. Wingo*, 407 U.S. 514, 532 (1972).
[14] *Id.* at 532-33; *see also United States v. Marion*, 404 U.S. 307, 320 (1971) (explaining that detaining an individual "may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends").
[15] *Barker*, 407 U.S. at 520 (quotation marks and citation omitted).

able than prisons to separate persons by their security risk – which puts the accused and the staff at greater risk of harm.[17] They "can be even more dangerous than prisons because officials there know so little about the people they admit at the outset."[18] Also concerning is that jails are not designed to provide necessary medical care for extended periods of time.[19] As the *Barker* Court noted, the time spent there is truly dead time, and that dead time is exacerbated when persons wait year after year to have their case adjudicated.

Amid all of these concerns, the Fifth Circuit's instruction is simple:

> At some juncture in a criminal prosecution the government's lengthy, inexplicable delay, in the face of vigorous demands for an immediate trial, is so offensive to the Sixth Amendment's guarantee of a speedy trial that a Court must intervene regardless of whether the defendant has been incarcerated, subjected to public scorn and obloquy, or impaired in his ability to defend himself.[20]

With these principles in mind, we turn to the state of affairs in Mississippi.

### B.     Mississippi Law and Practice

The Mississippi Supreme Court has often recognized the purposes of the speedy trial guarantee.[21] That court is frequently required to resolve speedy trial complaints arising out of Hinds County.[22] But by no means are the complaints isolated to Hinds County.[23]

---

[16] Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1686 n.434 (2003) (quotation marks and citation omitted); Marie Gottschalk, *Bring It On: The Future of Penal Reform, the Carceral State, and American Politics*, 12 Ohio St. J. Crim. L. 559, 581 (2015).

[17] *See* Gottschalk, 12 Ohio St. J. Crim. L. at 581 & n.102; Brief for the National Association of Criminal Defense Lawyers as Amicus Curiae Supporting Petitioner at 7, Betterman v. Montana, 136 S. Ct. 1609 (2016) (No. 14-1457) [hereinafter NACDL Brief].

[18] *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1521 (2012) (citation omitted); Schlanger, 116 Harv. L. Rev. at 1686 ("jails are more dangerous than prisons").

[19] NACDL Brief at 7-9; *see also* Therese Apel, *4 Years, No Trial for Calhoun County Inmate*, The Clarion-Ledger, April 11, 2016 ("'We are not set up to give mental care, that's not what county jails are. This person needs treatment,' [Calhoun County Sheriff Greg] Pollan said.") [hereinafter Calhoun County Article].

[20] *Hoskins v. Wainwright*, 485 F.2d 1186, 1188 n.3 (5th Cir. 1973).

[21] *E.g.*, *Taylor v. State*, 162 So. 3d 780, 787 (Miss. 2015); *Jenkins v. State*, 947 So. 2d 270, 277 (Miss. 2006); *Mitchell v. State*, 792 So. 2d 192, 212 (Miss. 2001).

[22] *E.g.*, *Taylor*, 162 So. 3d at 782; *Franklin v. State*, 136 So. 3d 1021, 1033 (Miss. 2014); *Johnson v. State*, 68 So. 3d 1239, 1240 (Miss. 2011); *Flores v. State*, 586 So. 2d 811 (Miss. 1991); *Flores (VanEtten) v. State*, 574 So. 2d 1314 (Miss. 1990). Hinds County drew special condemnation. In 2006, then-Chief Justice Jim Smith called Hinds County's criminal justice system "deplorable" and "unacceptable" because cases were not coming to trial in a timely manner. Jimmie E. Gates, *Justice: Give Hinds Crime Trials Priority*, The Clarion-Ledger, Feb. 21, 2006.

Given the frequency of speedy trial issues it faces, it is astonishing that the Mississippi Supreme Court has not reversed a criminal conviction for a speedy trial violation since 1992.[24, 25] The meaning of that fact is hotly contested. Four Justices on the Mississippi Supreme Court now believe that "the Sixth-Amendment right to a speedy trial in Mississippi is dead."[26, 27] Four other Justices, meanwhile, "greatly disagree with such an assertion."[28, 29]

---

[23] *E.g.*, *Rowsey v. State*, 188 So. 3d 486, 492 (Miss. 2015) (Greene County) ("Rowsey's trial commenced . . . forty-nine months after the incident, thirty-six months after indictment, and thirty-three months after arraignment."); *McBride v. State*, 61 So. 3d 138 (Miss. 2011) (Coahoma County); *State v. Woodall*, 801 So. 2d 678 (Miss. 2001) (Harrison County); *DeLoach v. State*, 722 So. 2d 512 (Miss. 1998) (Jones County).

[24] *Johnson*, 68 So. 3d at 1248 (Dickinson, J., dissenting); *Galloway v. State*, 122 So. 3d 614, 689 n.17 (Miss. 2013) (King, J., dissenting); *Franklin*, 136 So. 3d at 1038 (Dickinson, J., dissenting).

[25] Given Chief Justice Smith's outward concern, it is odd that the Mississippi Supreme Court never found a speedy trial violation during his 15-year tenure. Chief Justice Smith, in fact, wrote a number of majority opinions excusing egregious delays in Hinds County and elsewhere. *Compare Noe v. State*, 616 So. 2d 298, 300 (Miss. 1993) ("any delay of eight (8) months or longer is presumptively prejudicial"), *with Scott v. State*, 8 So. 3d 855 (Miss. 2009) (13-month delay in Hinds County not a speedy trial violation) (Smith, C.J.); *Stevens v. State*, 808 So. 2d 908, 916 (Miss. 2002) (386-day delay in Hinds County not a violation) (Smith, P.J.); *Simmons v. State*, 678 So. 2d 683 (Miss. 1996) (21-month delay not a violation) (Smith, J.) (Jones County); *McGhee v. State*, 657 So. 2d 799 (Miss. 1995) (574-day delay not a violation) (Smith, J.) (Harrison County); *State v. Magnusen*, 646 So. 2d 1275 (Miss. 1994) (449-day delay not a violation) (Smith, J.) (Harrison County); *Winder v. State*, 640 So. 2d 893 (Miss. 1994) (writing for the plurality over the dissents of four justices) (Smith, J.) (Washington County). The discrepancy between his rhetoric and his rulings suggests that what the Chief Justice found "deplorable" was not the fact that citizens were being denied their constitutional rights, but that Hinds County was not convicting citizens quickly enough.

[26] *Johnson*, 68 So. 3d at 1247 (Dickinson, J., dissenting); *see also* Kaitlyn Roach, *The Sixth Amendment Right to A Speedy Trial Sentenced to the Mississippi Gallows: Johnson v. State*, 32 Miss. C. L. Rev. 205, 205 (2013) ("Mississippi caselaw indicates that individuals accused of a crime in Mississippi no longer receive the procedural safeguards enumerated in the Sixth Amendment of United States Constitution, which guarantees a speedy trial").

[27] Justices Kitchens and Chandler joined Justice Dickinson's dissent in *Johnson*. Justice King joined a substantially similar dissent in *Franklin*. All four (Dickinson, Kitchens, Chandler, and King) dissented in *Ben v. State*, 95 So. 3d 1236 (Miss. 2012). Justice Chandler switched sides in *Franklin*. It is not clear whether recent turnover on the court will affect its speedy trial jurisprudence. "We'll see," retiring Justice Ann Lamar said last month. "A change in justices does somehow change the dynamic of the discussion." Patsy R. Brumfield, *Lamar Relishes Leaving Supreme Court for Family in Senatobia*, Mississippi Today, May 30, 2016.

[28] *Johnson*, 68 So. 3d at 1246 (plurality op.).

[29] One wonders whether the majority opinions in these cases constitute "a naked judicial claim to legislative—indeed, super-legislative—power; a claim fundamentally at odds with our system of government." *Czekala-Chatham v. State*, No. 2014-CA-8-SCT, 2015 WL 10985118, at *3 (Miss. Nov. 5, 2015) (Dickinson, J., dissenting) (quotation marks and citation omitted). After all, according to some Mississippi Supreme Court Justices, judges need not obey "a legislative act by a judicial body that . . . has no basis in the Constitution or United States Supreme Court precedent." *Id.* at *4 (quotation marks, citation, and brackets omitted). *But see James v. City of Boise, Idaho*, 136 S. Ct. 685, 686 (2016) (per curiam) ("The Idaho Supreme Court, like any other state or federal court, is bound by this Court's interpretation of federal law. The state court erred in concluding otherwise.").

The Justices have provided competing explanations for this situation. Several concede that their court "has spoken inconsistently on the question of speedy-trial rights."[30] They have "no doubt" that their inconsistency is "due to" the U.S. Supreme Court's decisions.[31]

Other Justices blame the U.S. Supreme Court for not offering state courts an easier way to resolve speedy trial cases. Justice Leslie King has observed that on direct appeal "the sole remedy for a speedy trial violation is dismissal of the charge," and remarked that his court's speedy trial jurisprudence "changed directions" when "some [defendants] were coming dangerously close to winning speedy-trial motions."[32]

Dismissal is intended to be a strong remedy. It reflects the overarching "concern that a presumptively innocent person should not languish under an unresolved charge."[33] If there was a less severe remedy, Justice King was implying, perhaps courts would grant it more often.[34] That he is correct reveals how skewed judicial reasoning has become in this corner of the law. Lower judges err when they manipulate speedy trial findings solely because they think the Supreme

---

[30] *Rowsey*, 188 So. 3d at 507 (Pierce, J., concurring).

[31] *Id.* There may be some truth to that statement. *See* Anthony G. Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stan. L. Rev. 525, 539 (1975).

[32] Leslie D. King, Associate Justice, Mississippi Supreme Court, Prepared Remarks at the Summer School for Lawyers CLE (July 8, 2015) (on file with Court); *see also Winder*, 640 So. 2d at 916 (explaining that the remedy of dismissal has caused the court to give "ever more lenient interpretations of just cause in order to avoid its effect") (Banks, J., dissenting).

[33] *Betterman*, 136 S. Ct. at 1614. The U.S. Supreme Court has several times called dismissal "unsatisfactorily severe," but each time refused to permit other remedies for speedy trial violations. *Barker*, 407 U.S. at 522; *Strunk v. United States*, 412 U.S. 434, 439-40 (1973). Its rationale has been subjected to withering criticism. *See* Amsterdam, *supra*, at 534-35 ("On its face, this proposition is incredible. Anglo-American law has long provided remedies for denial of a speedy trial other than dismissal of the prosecution with prejudice."). Some states used to make cash payments to persons acquitted after long pretrial delays, or sentence reductions to those convicted after long delays. *See* Note, *Dismissal of the Indictment As A Remedy for Denial of the Right to Speedy Trial*, 64 Yale L.J. 1208, 1213 n.34 (1955).

[34] Justice King is not alone in this belief. *See United States v. Jones*, 524 F.2d 834, 852 (D.C. Cir. 1975) ("where the only possible remedy is the draconian remedy of dismissal of the indictment, we have been reluctant to find that an accused's right to a speedy trial has been violated absent a credible showing that he has been substantially prejudiced by the delay"); *State v. Alfred*, 337 So. 2d 1049, 1057 (La. 1976) ("Barring extraordinary circumstances, courts should be reluctant indeed to rule that a defendant has been denied a speedy trial."); *see also* Patrick Ellard, *Learning from Katrina: Emphasizing the Right to A Speedy Trial to Protect Constitutional Guarantees in Disasters*, 44 Am. Crim. L. Rev. 1207, 1216 (2007) ("the [Supreme] Court has historically seemed reluctant to dismiss an indictment or reverse a conviction because of the remedy's severity").

Court's remedy "thoroughly repugnant."[35] Over time, "[t]he amendment has thereby been

twisted totally out of shape."[36]

Media coverage has not sparked reform. In 2014, the Clarion-Ledger reported that

murder suspect Lee Vernel Knight had been in the Hinds County Detention Center since

December 2007.[37] In late 2015, Howard Ballou reported that "Lee Vernal Knight is still in the

Hinds County Detention Center . . . ."[38, 39] Unfortunately, stories like these are not isolated

incidents.[40] Just this year the Clarion-Ledger reported on one detainee who has been incarcerated

for four years without trial and another who has been incarcerated for 11 years without trial.[41]

In any event, in answering the question posed earlier, the Mississippi Supreme Court's

rulings have sent a clear message: the court lacks the will to hold prosecutors and trial judges

---

[35] Amsterdam, *supra*, at 539. "Even before *Strunk*, lower courts . . . were coming increasingly to confuse the question whether the sixth amendment had been violated with the question whether it had been violated in the particular way that required dismissal as a remedy." *Id.* at 538.

[36] *Id.* at 539.

[37] Therese Apel, *2 Jailed for Years Without Trials*, The Clarion-Ledger, Apr. 18, 2014.

[38] Howard Ballou, *3OYS Investigates: Sitting in Jail*, Mississippi News Now, Nov. 16, 2015.

[39] As this case was pending, Knight was apparently removed from the Hinds County Detention Center, so another example may be in order. Marktain Kilpatrick Simmons has been in the Hinds County Detention Center since November 24, 2006 – more than nine and a half years. *See also* Therese Apel, *Long Wait in Jail for Men Waiting on Mental Hospital*, The Clarion-Ledger, May 1, 2015 (describing the Simmons and Knight cases).

[40] *See* Jimmie E. Gates, *Inmates Await Trial More Than 3 Years*, The Clarion-Ledger, Dec. 5, 2005 ("[Dashund] Davis, 24, is one of three inmates held in the [Hinds County] detention center for at least three years without their cases being resolved. . . . About 20 other inmates have been in the jail for at least 660 days awaiting trial."); Karen Houppert, *Challenging Mississippi's Depraved Justice System: Months in Jail, With No Indictment and No Lawyer*, Salon, Sept. 23, 2014 (describing delays in Scott County); Nicole Flatow, *These Mississippi Defendants Have Been in Jail for as Long as a Year Without Even Being Charged*, ThinkProgress, Sept. 25, 2014 ("Scott County Senior Circuit Judge Marcus Gordon says he will not appoint Bassett [a detainee incarcerated for nine months] a lawyer until he is formally indicted."); *see also Mississippi Judge: 'People Charged With Crimes, They Are Criminals'*, Al Jazeera America, Oct. 17, 2015 (recounting the following interview exchange: Reporter: "But these people are spending months before speaking to counsel." Judge Gordon: "Well that may be true. That's the hardship of the criminal system." Reporter: "Are their rights being violated?" Judge: "Lady, the criminal system is a system of criminals. Sure, their rights are violated. But not all rights are violated that you're calling violation." [sic]) [hereinafter Judge Gordon Interview].

[41] Calhoun County Article, *supra*; Jerry Mitchell, *Man in Mississippi Jail 11 Years Without Trial*, The Clarion-Ledger, May 22, 2016 ("[Steven Jessie] Harris remains in legal limbo. He has no lawyer . . . . [His attorney,] the fourth different public defender to represent Harris[,] . . . said he retired two years ago.").

accountable for egregious delays in criminal cases. The result is that accused persons wait longer and longer to go to trial.[42]

### C.     Patterson's Case

These circumstances have been described in greater detail than usual because they are collectively responsible for Patterson's case. Individuals who are incarcerated for a long time before trial file lawsuits against trial judges, prosecutors, and jailers. They seek compensation for the "detrimental impact" and "dead time" the U.S. Supreme Court described more than 40 years ago.[43]

Their complaints have an intuitive appeal. No one wants to incarcerate an innocent person. Yet too often the criminal justice system equates arrest with guilt. Regretfully, even Judges can fall into this trap.[44] The result is that speedy trial grievances fall on deaf ears.

Its intuitive appeal aside, Patterson cannot recover money damages from the one defendant left in this action, Hinds County. That is because Hinds County is not responsible for bringing criminal defendants to trial. The responsible entity is the District Attorney's office.[45, 46]

Even if Patterson had sued the District Attorney's Office, he still would not be entitled to compensation. In Mississippi, District Attorney's offices are agencies of the State, and State agencies cannot be sued in federal court for money damages under 42 U.S.C. § 1983.[47] To the

---

[42] *Johnson*, 68 So. 3d at 1249 & n.55 (Dickinson, J., dissenting).

[43] *Barker*, 407 U.S. at 532-33.

[44] *See, e.g.*, Judge Gordon Interview ("Lady, people charged with crimes, they are criminals.").

[45] *See* Miss. Code Ann. § 25-31-11 ("It shall be the duty of the district attorney . . . to appear in the circuit courts and prosecute for the state in his district all criminal prosecutions . . . ."); *Wright v. Pearl River Cnty.*, No. 1:13-CV-432, 2014 WL 7891928, at *6 (S.D. Miss. Nov. 7, 2014).

[46] If Patterson sued the District Attorney's Office in state court, he may have run afoul of the State's immunity under *state* law. The Mississippi Legislature has made the policy choice that Mississippi agencies are not liable for tort claims which arise when the plaintiff is a pretrial detainee, *see Liggans v. Coahoma Cnty. Sheriff's Dep't*, 823 So. 2d 1152, 1155 (Miss. 2002), despite the fact that pretrial detainees are presumed to be innocent.

[47] *See Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999); *Longino v. Hinds Cnty.*, No. 3:13-CV-167, 2014 WL 4545943, at *7 (S.D. Miss. Sept. 11, 2014) (finding Hinds County not liable for the practices of the District Attorney's Office, a state entity); *Burnett v. Hinds Cnty., Miss.*, No. 3:14-CV-651, 2015 WL 5785562, at *4

extent a District Attorney's office can be held accountable in federal court for speedy trial

violations, it would take a suit against the District Attorney seeking injunctive relief – *i.e.*, not

financial compensation – and even then any victory would apply only to current and future

detainees.[48] Obviously, that is not today's suit.

Assuming that Hinds County could be sued for these claims, moreover, Patterson lacks

evidence that the County has a policy of causing speedy trial violations. Case law actually

supports the opposite. As the undersigned wrote in another extended-incarceration case, "Hinds

County has a policy in place, which, if followed, may have prevented the miscarriage of justice

heaped upon [the defendant]."[49]

Patterson tries to get around this by arguing that Hinds County has a custom of speedy

trial violations. He supports his claim with the above-cited 2014 Clarion-Ledger newspaper

article about speedy trial concerns in Hinds County.[50] And if common knowledge can aid his

cause, it is well-known among Mississippi judges and attorneys that Hinds County has speedy

trial issues. The Mississippi Supreme Court has acknowledged as much time and time again.[51]

---

n.3 (S.D. Miss. Sept. 11, 2015); *Fox v. Mississippi*, No. 3:11-CV-377, 2012 WL 3154971, at *4 (S.D. Miss. Aug. 2, 2012) *aff'd,* 551 F. App'x 772 (5th Cir. 2014) (granting the State Eleventh Amendment immunity in § 1983 case).

[48] *E.g.*, *Bailey v. Mississippi*, 407 F.3d 684, 686 (5th Cir. 2005) (describing a federal suit against the Hinds County District Attorney which sought an injunction to remedy alleged constitutional violations); *Springsteen v. Combs*, No. A-13-CV-427, 2013 WL 5305312, at *4 (W.D. Tex. Sept. 19, 2013).

[49] *Longino*, 2014 WL 4545943, at *6; *accord Wright*, 2014 WL 7891928, at *6.

[50] There are other articles, too. *See, e.g.*, Jimmie E. Gates, *Special Court Term Aimed at Clearing Criminal Cases*, The Clarion-Ledger, Aug. 24, 2004; Jimmie E. Gates, *DA: Grant Cuts Could Cost Hinds 4 Attorneys*, The Clarion-Ledger, Aug. 16, 2004 ("The Hinds County district attorney's office – already plagued with speedy-trial concerns – stands to lose four prosecutors.").

[51] *See, e.g.*, Press Release, Mississippi Supreme Court, Supreme Court Appoints Special Judge for Hinds County Circuit Court (Aug. 29, 2007) ("'Judge Bridges' appointment should double the effort in assisting Hinds County Circuit Court in eliminating the backlog of old [criminal] cases that have inundated the system.'") (quoting Chief Justice Smith); Press Release, Mississippi Supreme Court, Supreme Court Appoints Special Judge for Hinds County Circuit Court (Jan. 24, 2008) (describing appointment of third special judge to handle old criminal cases); Press Release, Mississippi Supreme Court, Supreme Court Appoints Special Judge for Hinds County Circuit Court (Feb. 4, 2008) (describing "overcrowded docket" of Hinds County criminal cases); Press Release, Mississippi Supreme Court, Supreme Court Appoints two Special Judges for Hinds County Circuit Court (July 11, 2008) ("The appointments bring to six the number of court-appointed special judges assisting the Hinds County Circuit Court."); Press Release, Mississippi Supreme Court, Supreme Court Appoints Special Judge for Hinds County Circuit Court (Oct. 9, 2008).

Newspaper articles and common knowledge, however, are not admissible evidence.[52] It

remains to be seen whether a future suit would generate evidence sufficient to prove a custom of

speedy trial violations.

To all this, Patterson might protest that the law has denied him a remedy to an apparent

constitutional violation. He could invoke our nation's foundational ruling on judicial review –

*Marbury v. Madison*. In that case, the U.S. Supreme Court held that "where there is a legal right,

there is also a legal remedy by suit or action at law, whenever that right is invaded."[53]

The argument is unpersuasive because there *are* legal remedies for speedy trial

violations. Before trial, a federal court can vindicate a state defendant's speedy trial rights by

ordering the State to schedule a prompt trial or ordering the State to release the defendant.[54]

Patterson is ineligible for these because he has already been released. And neither of those

remedies offers compensation.[55] The money he seeks is simply foreclosed by law.

### D.      Winners and Losers

Hinds County has won this suit, but justice has lost.

There is no indication that the District Attorney's Office convicted the perpetrator of the

aggravated assault, so the public and the victim did not see justice done. Patterson was

imprisoned in a troubled jail with "rampant prisoner-on-prisoner violence, . . . homicide[,] and a

remarkable volume of contraband."[56] County taxpayers paid approximately $31,500 for his 23-

---

[52] *Patterson v. Kidd*, No. 3:13-CV-432, 2014 WL 4773977, at *1 n.2 (S.D. Miss. Sept. 24, 2014).
[53] 5 U.S. 137, 163 (1803) (quoting Blackstone).
[54] *See Dickerson v. State of La.*, 816 F.2d 220, 227-28 (5th Cir. 1987).
[55] *See Bauman v. Hidalgo Cnty., Tex.*, No. M-04-145, 2005 WL 1653082, at *5 n.1 (S.D. Tex. July 6, 2005) ("While the Constitution does afford a person a constitutional right to a speedy trial, the remedy for a violation is dismissal of any criminal charges, not money damages.").
[56] Press Release, U.S. Dep't of Justice, Justice Department Finds That Hinds County, Mississippi, Fails to Protect Prisoners from Harm and Detains Prisoners Beyond Court-Ordered Release Dates (May 21, 2015).

month incarceration.[57] County and state taxpayers had to pay for the government's public- and private-sector defense lawyers. Federal taxpayers had to pay for District Court staff to process this suit.

Excessive delays "threaten[] the fairness of the entire system."[58] Until state trial and appellate courts safeguard the presumption of innocence by ensuring that accused persons do not languish in jail year after year without a trial, justice in Mississippi will continue to be the loser.

## IV.    Conclusion

Hinds County's motion for summary judgment is granted. A separate Final Judgment will issue this day.

**SO ORDERED**, this the 10th day of June, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[57] Media reports suggest that the jail costs $45 per-person, per-day to operate. R.L. Nave, *Hinds: Jackson Should Pay More for Inmates*, Jackson Free Press, July 7, 2014.
[58] DOJ Brief at 12 (quotation marks and citation omitted).